FILED

2011 JUN 15 PM 12:59

US DISTRICT COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                   CASE NO.   6:11-CR-22-ORL-22GJK
                                                18 U.S.C. § 371
RAFAELA DUTRA TORO                              8 U.S.C. § 1324(a)(1)(A)(iv) & (v)(II)
                                                18 U.S.C. § 2
                                                18 U.S.C. § 982(a)(6)-Forfeiture
                                                28 U.S.C. § 2461(c)-Forfeiture

## SUPERSEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE

### A. Introduction

At all times material to this Superseding Indictment, unless otherwise indicated:

### Background on U.S. Immigration Law

1. Effective March 1, 2003, the Department of Homeland Security (DHS) assumed responsibility of the duties previously performed by the Immigration and Naturalization Service. Under DHS, there are three sub-agencies with immigration functions: Citizenship and Immigration Services (CIS); Customs and Border Protection (CBP); and Immigration and Customs Enforcement (ICE).

2. U.S. visas are issued by the United States Department of States (DOS), an agency of the executive branch of the United States Government.

3. The term "alien" as defined in the Immigration and Nationality Act is any person who is not a citizen or national of the United States.

4.     Under the laws and regulations of the United States, aliens are not permitted to lawfully work in the United States unless they obtain prior employment authorization from the United States Government. One lawful means by which aliens can obtain employment authorization is through a non-immigrant employment visa known as an H-2B visa.

## The H-2b Non-immigrant Visa (Temporary Work Visa)

5.     An H-2B visa is a non-immigrant visa granted to foreign nationals who seek to work in the United States on a temporary basis. A "non-immigrant visa" provides an alien with a temporary stay in the United States, as opposed to an "immigrant visa" which is issued for permanent residence in the United States. An H-2B non-immigrant alien is an alien who can enter and/or remain in the United States for a temporary period of time and is restricted to the activities consistent with the conditions of his/her visa or petition.

6.     The H-2B non-immigrant visa program permits employers to hire foreign workers to work in the United States to perform temporary non-agricultural services or labor on a one-time, seasonal, peak-load, or intermittent basis. The job must be temporary in nature (for one year or less). The employer's need cannot be ongoing or continuous. Before filling the position with temporary foreign labor, the employer must first seek to hire qualified United States citizens. An H2-B visa may not be issued if it will result in displacing United States workers capable of performing such services or labor.

7.     Prior to January 18, 2009, the form used to apply for temporary employment certification was known as the Application for Alien Certification ETA-750 (ETA-750). The ETA-750 was filed by the prospective employer with a state workforce agency in the state where the work was to be performed. The state workforce agency reviewed the ETA-750

for completeness, ensured that the employer was offering the prevailing wage for the job, and oversaw any advertising the employer might be required to do as part of the labor certification process. After the ETA-750 was reviewed by the state workforce agency, it was forwarded to the United States Department of Labor (DOL), an agency of the executive branch of the United States Government, for consideration and certification. If DOL certified the ETA-750, then DOL would issue a certification stamp that contained the signature of the certifying DOL officer and a final determination letter.

8.     Since January 18, 2009, the form used to apply for temporary employment certification is the Application for Temporary Employment Certification ETA-9142 (ETA-9142). The ETA-9142 sets forth the employer's name, address, Federal Tax Identification Number, the work site location(s), the job title, the total number of worker positions needed, the rate of pay, and the dates of employment. The prospective employer submits the ETA-9142 and supporting documentation directly to DOL for review and certification.

9.     Additionally, there are also eligibility requirements for employers to certify on the ETA-9142. Employers cannot seek or receive payments of any kind from the employee for any activity related to obtaining labor certification, including payment of the employer's attorney fees, application fees, or recruitment costs. Employers cannot place any H-2B workers outside the area of intended employment specified on the ETA-9142 unless the employer has obtained a new temporary labor certification from DOL. If the application is being filed as a job contractor, the employer will not place any H-2B workers with any other employer or at any other employer's work site unless:  1) the employer

applicant makes a bona fide inquiry as to whether the other employer has or intends to displace United States workers within the area of intended employment; and 2) all work sites are listed on the certified Application for Temporary Employment Certification.

10. The ETA-750 and ETA-9142 (hereinafter, collectively the "ETA Application") both contain signature blocks that require the prospective employer to sign under penalty of perjury that the information contained within the form is true and accurate.

11. The employer must also describe in detail the efforts used to recruit qualified United States workers for the job opportunity and the results of such efforts. The ETA Application must be completed and signed under penalty of perjury by the prospective employer wherein the employer promises to comply with DOL regulations governing the hiring, employment, and retention of those for whom an H-2B visa is sought.

12. The H-2B employer is required to provide DOL with a detailed statement of its temporary need, which must be signed by the employer on the employer's letterhead and must include evidence and documentation that supports the category of temporary need (i.e., seasonal, peak load, one-time occurrence, or intermittent). The H-2B employer is also required to justify the specific number of workers needed for the temporary period.

13. The ETA Application and supporting documentation is then reviewed and adjudicated by DOL. If DOL certifies the application, it provides the employer with an original certification stamp containing the signature of the certifying DOL officer and a final determination letter.

14. The next step in the H-2B visa process requires the employer to file a petition with CIS. The employer must submit a final determination letter to DOL, and a certified ETA Application to CIS with the Petition for Non-immigrant Worker (I-129). In the I-129 petition, the prospective employer represents that there is a specific job ready to be filled by the foreign labor. The I-129 petition also specifies the exact location where the prospective H-2B visa holders will work as well as describes the nature, terms, and requirements of the job. The prospective employer must complete the I-129 petition and sign under penalty of perjury, stating that the petition and the evidence submitted with it is all true and correct.

15. An employer may also seek to obtain H-2B renewal visas for prospective employees who are already in the United States as H-2B visa holders but who work for a <u>different</u> company. In this type of situation, the employer must show that they are a different company than the original petitioning company, because continuous employment is a disqualifying factor unless there is a change of location. An I-129 petition that overlaps with an existing petition filed by the same company will generally not be approved for the same geographical location.

### VR SERVICES, Travel Work Study Overseas, Inc., CD Quality Service Corporation, and the Defendant

16. "VR SERVICES" was a temporary labor staffing company headquartered in Orlando, Florida, which supplied temporary labor to numerous businesses within the hotel and hospitality industries throughout Florida and the United States. VR SERVICES was comprised of eleven smaller companies, which all existed in support and furtherance of VR SERVICES. Those eleven companies included: 1) VR High Quality Corporation; 2) EPCO

People Employment Corporation; 3) Travel Work Study Overseas, Inc.; 4) Fourth Millennium Corporation; 5) CD Quality Service Corporation; 6) RV Quality Services, Inc.; 7) WB Improvements, Inc.; 8) Crystal Diamond, Inc.; 9) Very Reliable Services, Inc.; 10) MLE Management Services, Inc.; and 11) Ocean Star Services Corporation. VR SERVICES' principal place of business was located at 7536 Universal Boulevard, Orlando, Florida 32819.

17. Rafaela Dutra Toro (**TORO**) was the Assistant Director of Travel Work Study Overseas, Inc. (TWSO), one of VR SERVICES' companies. TWSO functioned as an H-2B recruiting agency for VR SERVICES with offices in Sao Paolo, Brazil, and Orlando, Florida. Additionally, VR SERVICES used TWSO to prepare and file labor certification applications and H-2B visa petitions with DOL and CIS, respectively.

18. **TORO**, as Assistant Director of TWSO, received direction from, and was in part managed by, Valeria Barbugli, Vice-President of VR SERVICES and the eleven smaller companies that comprised VR SERVICES. CD Quality Service Corporation, a VR SERVICES' company, was a labor staffing company that supplied contract labor to hotels and various other service industry businesses.

19. Beginning on an unknown date, but at least as early as August 2006, and continuing thereafter, through and including January 2010, in the Middle District of Florida and elsewhere, **TORO**, and other persons known and unknown to the Grand Jury, encouraged and induced the illegal entry of aliens, concealed, harbored, and shielded from detection both the illegal entry, and also the remainder of illegal aliens, all for the purposes of evading the immigration laws of the United States and for commercial advantage and

private financial gain. **TORO** also submitted materially false documentation through VR SERVICES' numerous companies to DOL, CIS, and DOS, which resulted in the approval of numerous employment-based H-2B visas. This improperly allowed numerous foreign nationals (or aliens) to enter into and/or remain in the United States as temporary laborers.

### B. The Conspiracy

20. Beginning on an unknown date, but at least as early as August 2006, and continuing thereafter, through and including January 2010, in the Middle District of Florida, and elsewhere,

### RAFAELA DUTRA TORO

the defendant herein, did knowingly and willfully combine, conspire, and agree, with other persons both known and unknown to the Grand Jury, to:

(a) knowingly conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection, aliens, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that the aliens had come to, entered, and remained in the United States in violation of law, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), (a)(1)(A)(v)(I), (a)(1)(A)(v)(II), and (a)(1)(B)(i);

(b) knowingly encourage and induce aliens, for the purpose of commercial advantage and private financial gain, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that the coming to, entry, and residence in the United States by the aliens was and would be in violation of law, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), (a)(1)(A)(v)(II), and (a)(1)(B)(i); and,

(c) knowingly make under oath, and as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribe as true, false statements with respect to a material fact in applications, affidavits, and other documents required by the immigration laws and regulations prescribed thereunder, and knowingly present an application, affidavit, and other document which contained a false statement and which failed to contain any reasonable basis in law and fact, in violation of Title 18, United States Code, Sections 1546(a) and 2.

### C. Manner and Means

The conspirators would and did use the following manner and means, among others, to accomplish the object of the conspiracy:

21. It was a part of the conspiracy that **TORO** and other co-conspirators not charged herein would and did enrich themselves by preparing and submitting fraudulent ETA Applications, fraudulent I-129 petitions, and fictitious supporting documentation to the United States government which improperly led to the approval of numerous H-2B visas. Based on those fraudulent submissions, **TORO** and other co-conspirators not charged herein established a permanent foreign labor pool that was employed across the United States in jobs that were not filled by United States citizens.

22. It was a further part of the conspiracy that these applications, petitions, and supporting documentation contained fraudulent material misrepresentations to the government, including, but not limited to: 1) false assertions that the job opportunities' terms, conditions, and occupational environment were not contrary to Federal, State, or local law; 2) false assertions that the job opportunities were clearly open to any qualified United States worker; 3) false statements as to the location where the aliens would work;

8

4) false statements concerning the temporary need for alien labor; 5) false statements about the number of jobs listed in the application based on the service contract agreements; 6) false statements representing that the alien workers would be employed by a new employer; and 7) false statements that no payments were received from the alien workers to obtain labor certifications.

23. It was a further part of the conspiracy that other co-conspirators not charged herein would and did create multiple companies for VR SERVICES so as to deceive the United States government.

24. It was a further part of the conspiracy that **TORO** and other co-conspirators not charged herein would and did use VR SERVICES' multiple companies to facilitate the submissions of fraudulent ETA Applications as well as I-129 petitions to DOL and CIS, which resulted in the approval of numerous H-2B visas that would not otherwise have been approved.

25. It was a further part of the conspiracy that **TORO** and other co-conspirators not charged herein would and did use VR SERVICES' multiple companies on successive petitions in order to create the illusion that a bona fide new (and independent) company had a temporary need for labor.

26. It was a further part of the conspiracy that **TORO** and other co-conspirators not charged herein would and did place existing H-2B workers from a previously filed VR SERVICES' petition (using one VR SERVICES' company name) onto a new "Change of Employer" petition (using a second VR SERVICES' company name). This was done to create the illusion that existing H-2B workers were "newly" hired and under the employ of

a separate and distinct company, when in fact those H-2B workers had continuously worked for VR SERVICES without interruption.

27. It was a further part of the conspiracy that **TORO** and other co-conspirators not charged herein would and did recruit foreign nationals to be employed by VR SERVICES.

28. It was a further part of the conspiracy that **TORO** and other co-conspirators not charged herein would and did charge aliens approximately $350-$750 to be placed onto fraudulent H-2B visa petitions contrary to law.

29. It was a further part of the conspiracy that **TORO** and other co-conspirators not charged herein employed or facilitated the employment of illegal aliens including aliens who overstayed their visas and those who entered the United States without inspection by an immigration official.

30. It was further part of the conspiracy that **TORO** and other conspirators would and did conceal and attempt to conceal the aims, purposes and acts of the conspiracy in furtherance of the conspiracy.

### D. Overt Acts

31. In furtherance of the conspiracy, and to affect the objects thereof, **TORO** and other co-conspirators not charged herein committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

    a. On or about June 15, 2009, in Orange County, Florida, in the Middle District of Florida, **TORO** and other co-conspirators not charged herein submitted an ETA-9142 application, case number C-0916845250, to DOL on behalf of CD Quality

10

Service Corporation requesting certification for 80 unnamed room attendant positions. Appendix B.1 of that application contained the signature of **TORO**, who signed as the "preparing agent" for the ETA-9142 application. As the "preparing agent," **TORO** certified that she was designated by CD Quality Service Corporation to act on its behalf in connection with the ETA-9142 application. **TORO** also certified that the information contained within the ETA-9142 application was true and correct, when, as **TORO** then and there well knew, the application contained false representations that all work sites were listed on the ETA-9142 application and that the job opportunities were open to any qualified United States worker.

    b.  On or about June 15, 2009, in Orange County, Florida, in the Middle District of Florida, **TORO** and other co-conspirators not charged herein submitted a purported recruitment report to DOL, in support of the aforementioned ETA-9142 application. In this recruitment report, **TORO** and other co-conspirators not charged herein falsely represented that CD Quality Service Corporation had interviewed and hired a specific U.S. worker to fill one of its available positions, when, as **TORO** then and there well knew, that assertion was false.

    c.  On or about August 3, 2009, in Orange County, Florida, in the Middle District of Florida, **TORO** and other co-conspirators not charged herein, on behalf of CD Quality Service Corporation, submitted an I-129 petition to CIS requesting the approval of 58 H-2B workers. The I-129 petition was filed in connection with the aforementioned ETA-9142 application, and was assigned file number EAC0921550696 by CIS.

    d. On or about June 23, 2009, in Orange County, Florida, in the Middle District of Florida, **TORO** and other co-conspirators not charged herein submitted a purported service contract between CD Quality Services Corporation, d/b/a VR High Quality Services and the Seralago Hotel and Suites dated May 15, 2009, in support of the aforementioned ETA-9142 application and CIS file EAC0921550696. The contract purportedly contained the signature of a manager from the Seralago Hotel and Suites, and it indicated that CD Quality Services Corporation would provide employees at the Seralago Hotel and Suites for the period of July 13, 2009, through April 30, 2010. As **TORO** then and there well knew, the purported service contract was fictitious, and CD Quality Services Corporation had no such contract with Seralago Hotel and Suites.

    e. On or about June 23, 2009, in Orange County, Florida, in the Middle District of Florida, **TORO** and other co-conspirators not charged herein submitted a service contract between CD Quality Services Corporation and the Sheraton Safari dated May 22, 2009, to support the aforementioned ETA-9142 application and CIS file EAC0921550696. The service contract purportedly contained the signature of the General Manager of the Sheraton Safari, and indicated that CD Quality Service Corporation would contract out employees at the Sheraton Safari for the period of July 15, 2009, through April 30, 2010. As **TORO** then and there well knew, the purported service contract was fictitious, and CD Quality Services Corporation had no such contract with the Sheraton Safari.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

Beginning on an unknown date, but at least as early as January 2008, and continuing thereafter, through and including January 2010, in the Middle District of Florida, and elsewhere,

### RAFAELA DUTRA TORO

the defendant herein, did knowingly encourage and induce aliens, for the purpose of commercial advantage and private financial gain, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i) and Title 18, United States Code, Section 2.

## FORFEITURES

1. The allegations contained in Counts One and Two of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provision of Title 18, United States Code, Section 982(a)(6); Title 8, United States Code, Section 1324(b); and Title 28, United States Code, Section 2461(c).

2. As to the first two objects (violations of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), (a)(1)(A)(iv), (a)(1)(A)(v)(I), (a)(1)(A)(v)(II), and (a)(1)(B)(i) of the conspiracy alleged in Count One, the defendant, **RAFAELA DUTRA TORO**, shall forfeit to the United States of America, pursuant to Title 8, United States Code, Section 1324(b), and Title 28, United States Code, Section 2461(c), any and all right, title, and interest she has in any conveyance, including any vessel, vehicle, or aircraft, that has been or is being

used in the commission of a violation of subsection (a) of section 1324, the gross proceeds of such violation, and any property traceable to such conveyance or proceeds.

3. As to the third object (violations of Title 18, United States Code, Sections 1546(a) and 2) of the conspiracy alleged in Count One of the Superseding Indictment, the defendant, **RAFAELA DUTRA TORO**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(6), any and all right, title, and interest she has in the following:

(a) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the defendant is convicted; and

(b) any property real or personal --

(i) that constitutes, or is derived from or is traceable to proceeds obtained directly or indirectly from the commission of the offense of which the defendant is convicted; or

(ii) that is used to facilitate, or is intended to be used to facilitate, the commission of which the defendant is convicted.

4. If any of the property described above, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

14

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL,

_____
Foreperson

ROBERT E. O'NEILL
United States Attorney

By: _____
Stephanie E. Gorman
Special Assistant United States Attorney

By: _____
Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT

Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

RAFAELA DUTRA TORO

## SUPERSEDING INDICTMENT

Violations:

18 U.S.C. § 371
8 U.S.C. § 1324(a)(1)(A)(iv) & (v)(II)
18 U.S.C. § 2

A true bill,

_____
Foreperson

Filed in open court this 15th day
of June, 2011.

_____
Clerk

Bail $ _____

GPO 863 525